UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| AMBER L., <br>     Plaintiff, <br><br> v. <br><br> FRANK BISIGNANO, Commissioner of Social Security, <br>     Defendant. | C.A. No. 24-cv-60-MRD-PAS |

MEMORANDUM AND ORDER

Melissa R. DuBose, United States District Judge.

Before the Court is Magistrate Judge Sullivan's ("MJ") Report and Recommendation ("R&R") (ECF No. 15) recommending that the Court deny Plaintiff Amber L.'s Motion to Reverse the Decision of the Commissioner (ECF No. 11) and grant Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 12). The crux of the R&R is that Plaintiff's frequent visits to various medical providers and the notes and records generated from those visits fails to establish that Plaintiff would be absent or off-task to a degree that precludes work, and that she is therefore not entitled to Supplemental Security Income ("SSI"). Plaintiff filed an Objection to the R&R (ECF No. 17), asserting six separate errors that this Court will now determine de novo. Fed. R. Civ. P. 72(b)(3). After careful consideration of the papers filed and a close examination of the Social Security Administrative Record ("Record") (ECF No. 6), this Court adopts the R&R in its

entirety, denies Plaintiff's Motion to Reverse the Decision of the Commissioner, and grants Defendant's Motion for an Order Affirming the Decision of the Commissioner.

## I. BACKGROUND

The R&R provides a thorough and detailed recitation of the facts in this case. For the sake of brevity, this section hones in on the information in the record that will provide the reader with enough context to understand the basis of the Plaintiff's social security request and the objections to the R&R discussed herein.

Plaintiff's second application for "SSI" "alleges an inability to work due to autism, endometriosis and abdominal pain, social anxiety, depression, generalized anxiety, migraines, asthma, tachycardia, celiac, hypothyroidism and chronic fatigue." ECF No. 6-2 at 30 (Tr. 29). From 2018–2023, Plaintiff sought medical treatment for approximately 240 days (2 days in 2018, 13 days in 2019, 50 days in 2020, 50 days in 2021, 79 days in 2022, and 46 days in 2023). ECF No. 11-1 at 2. Despite the frequent medical visits "the ALJ found [P]laintiff could do a range of sedentary work, except for some postural and environmental limitations, and mental restrictions to simple instructions, no production-rate work, no contact with the public, no more than occasional interactions with coworkers and supervisors, and only occasional changes in the work routine." ECF No. 12 at 3–4 (Tr. 28–29). Plaintiff suggests "the ALJ simply ignored the impact all of Ms. L's medical treatment would have on her ability to maintain regular attendance and remain on task throughout a normal workday." ECF No. 11-1 at 6. Aggrieved by the ALJ's decision, Plaintiff appealed to the Appeals Council who rejected the appeal and affirmed the ALJ's decision. ECF No. 6-2 at 11–

2

13 (Tr. 10–12). Plaintiff now asks the district court to review the Commissioner's final decision to deny benefits.

## II. STANDARD OF REVIEW

Fed. R. Civ. P. 72(b)(3) dictates how parties and district judges should handle objections to R&Rs. The rule states "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*

The R&R provides a detailed recitation of the standard of review applied to the Commissioner's decision. *See* ECF No. 15 at 5–7. Ultimately, the district court is reviewing the entire record and the Commissioner's decision for "substantial evidence and conformity to relevant law." *Purdy v. Berryhill*, 887 F.3d 7, 12–13 (1st Cir. 2018) (citation omitted). When substantial evidence supports the Commissioner's decision, then the Court must affirm. *Id.* (citation omitted); 42 U.S.C. § 405(g).

## III. DISCUSSION

With the background and standard laid out, the Court moves on to address each objection raised by Plaintiff. The objections are as follows:

1. Ms. L objects to the Magistrate's summary finding that the Administrative Law Judge (ALJ) 'carefully considered' the medical opinion evidence from her psychologist and primary care provider, and that the State agency psychologists found she 'retains the ability to sustain a normal 8/5/40 work routine.'
2. Ms. L objects to the Magistrate's mischaracterization of the Plaintiff's argument in the Factual Background and Analysis.
3. Ms. L objects to the Magistrate's incorrect and inappropriate medical judgment about the materials submitted to the SSA after the last review by the State agency physicians and psychologists.

4. Ms. L objects to the Magistrate's failure to follow her own precedent regarding absenteeism and off task behavior.
5. Ms. L objects to the Magistrate's section entitled, 'SSA Expert's Prior Administrative Findings.'
6. Ms. L objects to the Magistrate's credibility finding.

ECF No. 17 at 1. The Court will discuss each objection in the order they were raised.

A. **Ms. L objects to the Magistrate's summary finding that the Administrative Law Judge (ALJ) "carefully considered" the medical opinion evidence from her psychologist and primary care provider, and that the State agency psychologists found she "retains the ability to sustain a normal '8/5/40' work routine."**

This objection takes issue with "the finding that the ALJ 'carefully considered the opinions submitted by Plaintiff's treating primary care nurse practitioner at Thundermist (N.P. Alexandra Gottier, Tr. 1693–96, who opined to extreme physical limits due to pain and fatigue persisting over the prior ten years and treating psychologist (Dr. Erin Rabideau).'" ECF No. 17 at 6 (quoting ECF No. 15 at 2). The Plaintiff argues that by not adopting the two opinions, namely that the Plaintiff would either be absent or off-task to a degree that precludes work, the ALJ "articulated no discussion or explanation whatsoever about the supportability or consistency of [these] particular opinions." *Id.* at 7. This cherry-picks from the ALJ's decision and ignores the lengthy discussion about the many inconsistencies between Plaintiff's medical records and the questionnaire responses of Gottier and Dr. Rabideau.[1] Take the following excerpts, for example, which demonstrate that the

---

[1] Gottier and Dr. Rabideau did not turn over medical records. Instead, each filled out *Supplemental Questionnaire as to Residual Functioning Capacity*. ECF No. 6-2 at 34–35 (Tr. 33–34). The *Questionnaire* for Gottier can be found at ECF No. 6-12 at 192–95 (Tr. 1693–96) and for Dr. Rabideau at ECF No. 6-13 at 73–76 (Tr. 1835–38).

4

ALJ did, in fact, carefully consider the medical opinion evidence from these two providers.

> Nurse Practitioner Gottier suggested the claimant would be absent from work more than four days per month and start work late or leave work early more than four days per month. This form appears to have been completed as an accommodation to the claimant and includes only conclusions regarding functional limitations and is not supported as it is without any rationale for those conclusions. The undersigned finds this evidence is not persuasive because it is not consistent with the objective studies in the record or the treatment for the claimant's conditions . . . Despite Nurse Practitioner Gottier's conclusions in this *Questionnaire*, the claimant acknowledged in her *Function Reports* that she can prepare simple meals, do light household chores, go out alone, shop online and by phone, pay bills and handle a savings account . . . This evidence is not consistent with the author's conclusory statements that the claimant would not be capable of performing routine, repetitive tasks or would have frequent interruptions in her the [sic] ability to function socially.
> . . .
>
> Dr. Rabideau would not provide treatment notes to support the extreme symptoms and limitations described in the [October 2023 supplemental] letter. The undersigned is not persuaded by this letter because it is not supported by any treatment notes or narrative explanations and it is not consistent with treatment notes from other providers. For example, Dr. Rabideau's suggested the claimant often presented as disheveled and ungroomed, however, the record from other providers is not consistent with this finding . . . Dr. Rabideau indicated the claimant utilized the services of a suicide hotline approximately one to two times per week, but it appears that this report may be based on the claimant's subjective symptom reporting. Yet, the voluminous record of evidence, which includes mental health treatment notes from other providers, but not Dr. Rabideau, fail to support the frequency of suicidal ideation that Dr. Rabideau described.

ECF No. 6-2 at 35–36 (Tr. 34–35). It is clear from the ALJ's decision, when read as a whole, that there were serious concerns with how Gottier's and Dr. Rabideau's questionnaire responses conflicted with Plaintiff's medical records. It follows then

5

that their opinions on absenteeism/time-off-task, which also conflicted with other expert opinions on that topic, were questioned and/or ultimately rejected.

The objection goes on to take issue with the ALJ's consideration of the opinions from three non-examining expert psychologists who, as summarized by the MJ in the R&R, "found that Plaintiff's statements regarding symptoms are only partially consistent with the evidence and that Plaintiff is moderately limited in the ability to function in the workplace but retains the ability sustain a normal '8/5/40' work routine." ECF No. 15 at 3; ECF No. 17 at 7–8. The ALJ found the State agency psychological consultants' mental assessments "persuasive because they are consistent with the claimant's treatment history and the objective evidence of record as a whole." ECF No. 6-2 at 34 (Tr. 33). While it is true (as Plaintiff points out) that these psychologists "were commenting on the impact of her mental illnesses" and not physical health, ECF No. 17 at 8, the R&R accurately states that "the ALJ [also] considered the findings of three non-examining physician experts . . . all of whom found Plaintiff to be physically able to perform at least light work with postural and environmental limits," ECF No. 15 at 3. *See generally* ECF No. 6-3 (containing the three non-examining physician experts' "reports or opinions"). After reviewing the record de novo, this Court agrees with the statement in the R&R that the ALJ "carefully considered" all of the medical opinions, and overrules this objection to the R&R.

### B. Ms. L objects to the Magistrate Judge's mischaracterization of the Plaintiff's argument in the Factual Background and Analysis or the R&R.

The Plaintiff takes issue with footnote 7 in the R&R which states the following:

6

> The Court's summary of the factual background does not constitute findings of fact. Rather, it reflects the Court's survey of the factual evidence in the record to determine whether there is substantial evidence to support the ALJ's findings that a reasonable mind would accept as adequate. With apologies to the reader, the Court notes that this factual background is unusually detailed to respond to Plaintiff's arguments, particularly the contention that the sheer number of medical encounters would result [in] absenteeism that is *per se* disabling.

ECF No. 15 at 11 n.7. Plaintiff raises two objections to this footnote. First, that the "apolog [y] for providing a lengthy analysis of the claim suggests that this matter is not worthy of this court's full consideration." ECF No. 17 at 10. The Court summarily dismisses this argument because the R&R reflects that the MJ did, in fact, fully consider Plaintiff's claims, and the notation about the level of detail in the R&R confirms that the facts and claims were fully reviewed and considered. The word choice "apology" is of no consideration to this Court.

The second objection to this footnote is that it reflects a mischaracterization of the argument because "[Plaintiff] has not argued for a finding 'that the sheer number of medical encounters would result [in] absenteeism that is *per se* disabling.'" *Id*. Rather, Plaintiff suggests the argument is better characterized as "the sheer number of medical encounters are so overwhelmingly consistent with the off task and absenteeism opinion evidence from [Plaintiff's] treating sources that it is clear error for the ALJ not to address those limitations directly in [the] Residual Functional Capacity[2] (RFC) finding." *Id*. And she further contests that it is "error for the

---

[2] RFC refers to "residual functioning capacity." It is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related

7

Magistrate to read into the State agency opinions a declaration that [Plaintiff] was capable of perfect attendance." *Id.*

Plaintiff's Motion to Reverse (ECF No. 11) posits that there were two treating source opinions—from a psychologist and a family nurse practitioner ("FNP")—that were not "fully and fairly evaluate[d]" in the ALJ's RFC finding. ECF No. 11-1 at 42–43. In response to questions about estimates on how many days per month the patient is likely to be absent/start work late/leave work early, both the psychologist and FNP indicated that it would be more than four days per month. ECF Nos. 6-12 at 195 (Tr. 1696); 6-13 at 76 (Tr. 1838). And in response to questions about the Plaintiff's ability to remain focused/stay on task, both treating sources indicated that the Plaintiff would be frequently interrupted/distracted. ECF Nos. 6-12 at 194–95 (Tr. 1695–96); 6-13 at 74–76, 201 (Tr. 1836–38, 1963).

The ALJ's decision explicitly discusses these time off-task/absenteeism opinions from these two treating sources (*see* ECF No. 6-2 at 34–36; Tr. 33–35), so the question becomes whether the ALJ's findings were supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 42 U.S.C. §§ 405(g), 1383(c)(3); *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Two recent cases suggest that "it is reversible error if the ALJ fails specifically to assess the issue of absenteeism," *Denise D. v. O'Malley*, No. 23-

---

symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. § 416.945(a)(1).

233-PAS, 2024 WL 3329473, at *8 (D.R.I. July 8, 2024) (citing *Jacquelyn V. v. Kijakazi*, No. 21-314-MSM, 2023 WL 371976, at *5 (D.R.I. Jan. 24, 2023), *adopted by text order* (D.R.I. Mar. 7, 2023)), but that is not the case here. The R&R explains that "[t]he ALJ found both treating source opinions to be unpersuasive. In particular, the ALJ did not adopt their opinions that Plaintiff would be absent or off-task to a degree that precludes work." ECF No. 15 at 2. The record reflects that the information from the treating sources was considered but deemed not persuasive because their opinions were explicitly contradicted by other evidence in the record. This Court therefore concludes the Commissioner's decision is supported by substantial evidence and overrules this objection to the R&R.

C. **Ms. L objects to the Magistrate Judge's incorrect and inappropriate medical judgment about the materials submitted to the SSA after the last review by the State agency physicians and psychologists.**

Plaintiff's current application contains over a thousand pages of records related to plaintiff's medical treatment, of which, approximately 350 were provided after the SSA file review and were seen only by the ALJ. The R&R stated that "an ALJ can review post-file review records without the assistance of a medical expert to determine whether they reflect worsening or symptoms more serious than those in the records seen by the non-examining experts." ECF No 15 at 9 (citing *Michele S. v. Saul*, C.A. No. 19-65-WES, 2019 WL 6242655, at *8 (D.R.I. Nov. 22, 2019), *adopted by text order* (D.R.I. Dec. 13, 2019)). Plaintiff argues that the R&R "sought to apply a contrived common-sense exception, which makes little sense in this case," and suggests the MJ was not qualified to interpret raw medical data. ECF No. 17 at 11.

9

The problem with Plaintiff's argument is that it ignores the law outlined in *Michele S.* which allowed the ALJ to review those records, and the MJ did not "apply a contrived common-sense exception," but rather she cited to a case from this district that found "the ALJ may rely on his own common-sense observation that the post-review records are similar to or more benign than the pre-review records." ECF No. 15 at 9 (citing *Sanford v. Astrue*, No. CA 07-183 M, 2009 WL 866845, at *8–10 (D.R.I. Mar. 30, 2009)) (emphasis added). And that is exactly what the ALJ did here. "This post-file-review treatment reflects complaints and symptoms that are similar to those reflected in the record that was reviewed and interpreted by the SSA experts . . . Overall, however, the objective observations in the post-file review record reflect some improvement." ECF No. 15 at 19. Nowhere in the record did the ALJ or MJ interpret medical data, each merely made observations that the Plaintiff's complaints in those records did not reflect a worsening or symptoms more serious than those in the records seen by the non-examining experts. This objection lacks merit.

### D. Ms. L objects to the Magistrate's failure to follow her own precedent regarding absenteeism and off task behavior.

This objection cites to prior cases handled by MJ Sullivan and argues she "fail[ed] to follow her own precedent regarding absenteeism and off task behavior." ECF No. 17 at 13. The two cases are *Jacquelyn V.* and *Jessica S. v. Kijakazi*, C.A. No. 21-75MSM, 2022 WL 522561, at *4–6 (D.R.I. Feb. 22, 2022) *adopted*, 2022 WL 834019 (D.R.I. Mar. 21, 2022). The MJ explicitly differentiated this case from *Jacquelyn V.* and *Denise D.* "where the evidence of absenteeism/off-task time was

undisputedly established *inter alia* by the recurrence of a work preclusive number of hospital admissions or in-office procedures to provide medically necessary treatment (such as IV hydration, IV administration of pain medication and medication infusions) available only in the hospital or medical office setting." ECF No. 15 at 26–27 (emphasis in original). The Plaintiff suggests the MJ "spent just one sentence on an illogical attempt to distinguish this case" from *Jacqueline V. and Denise D.*, ECF No. 17 at 13, but this differentiation is important and accurate. In those cases, the plaintiffs' absenteeisms were caused by the sheer number of hospital admissions and medical appointments for treatments. The record here suggests Plaintiff frequents medical appointments for complaints that do not require follow-up treatment or admissions to a hospital. *See* ECF No. 15 at 20–21 (describing a "pattern of repeatedly seeking medical treatment for relatively mild symptoms.").

Plaintiff goes on to argue that the R&R "deemed that the ALJ's focus on the parts of the treating source opinions that he claimed conflicted with some of the medical evidence justified rejection of . . . every part of the opinion," and that the MJ "ignored the crux of the issue, which [is whether] the medical evidence includes so many treatment episodes that it is impossible to conclude that [Plaintiff] was capable of perfect attendance." ECF No. 17 at 13. However, the R&R specifically addresses the argument Plaintiff claims the MJ ignored. "Significantly, the [FNP] absenteeism/off-task opinion does not purport to rely on the many times Plaintiff appeared seeking treatment at Thundermist for cold/sinus/ear pain/asthma/sore throat symptoms, although these visits were the primary focus of [FNP's] treatment

11

and are the basis for Plaintiff's argument that the sheer volume of such appointments is work preclusive." ECF No. 15 at 25. The MJ went on to state "the [FNP] opinion rests on 'chronic fatigue,' which is not one of Plaintiff's diagnoses and back/hand pain that is not reflected in the [FNP] treating record." *Id.* And all this comes after the MJ explained in-depth the basis behind the ALJ's explanation of why the "[FNP's] absenteeism and of-task time opinions" were "unsupported and inconsistent with objective studies and the treatment Plaintiff received." *Id.* at 24. The Court rejects this objection as well.

### E. Ms. L Objects to the Magistrate's section entitled, "SSA Expert's Prior Administrative Findings."

This objection relates back to the Plaintiff's concern about the post-file review portion of the record. The Plaintiff argues "[n]either the Magistrate nor the ALJ are qualified to evaluate 350 pages of medical evidence (more than one-third of the total) without some expert guidance" and that "even if you excuse that failing, the ALJ decision and the State agency opinions on which it is based are lacking because they do not address the amount of time Ms. L would be off task or absent from the workplace." ECF No. 17 at 15. The R&R states that "[t]he problem with this argument is that Plaintiff fails to highlight any specific record that would 'detract [] from the weight that can be afforded [to the SSA findings.]'" ECF No. 15 at 27 (quoting *Ruben M. v. Saul*, C.A. No. 19-119MSM, 2020 WL 39037, at *9 (D.R.I. Jan. 3, 2020)). The ALJ and MJ concluded that these records did not reflect objective worsening or symptoms more serious than those in the records seen by the non-examining experts. *See* ECF No. 15 at 20–21 (explaining the types of visits and

12

complaints captured during several doctor visits in June 2023 to support conclusion that Plaintiff had a pattern of repeatedly seeking medical treatment for relatively mild symptoms). This Court agrees with the findings and reasoning of the ALJ and MJ and rejects this objection.

**F. Ms. L objects to the Magistrate Judge's credibility finding.**

Plaintiff does not develop this argument whatsoever. The entire objection states, "[r]egarding the Magistrate's credibility analysis, there can be no doubt that Ms. L is not well. The fact that there are some inconsistencies does not mean that she did not need all of the medical treatment she sought and received." ECF No. 17 at 16. The ALJ and MJ highlighted numerous inconsistencies between the Plaintiff's statements about the extreme severity of symptoms and her medical records. *See* ECF 15 at 27–28. Importantly, the ALJ did accept as credible "Plaintiff's subjective complaints of pelvic pain from endometriosis and set significant RFC limits to accommodate such pain." *Id.* at 28–29. In *Sacilowski v. Saul*, the First Circuit discussed that an ALJ must take a claimant's statements as true in the absence of evidence that directly rebuts the claimant's testimony or presents reasons to question credibility. 959 F.3d 431, 441 (1st Cir. 2020). Given the inconsistencies between the testimony and the medical records, the ALJ's credibility finding is supported by substantial evidence in the record and the Court may therefore not disturb it now on appeal. *See Purdy*, 887 F.3d at 12–13.

13

## IV.   CONCLUSION

The Court ADOPTS the R&R in full over Plaintiff's objections, DENIES Plaintiff's Motion to Reverse the Decision of the Commissioner, and GRANTS Defendant's Motion for an Order Affirming the Decision of the Commissioner.


IT IS SO ORDERED.

_____
Melissa R. DuBose
United States District Judge

09/26/2025